FRANK E. FURST ET AL. *v.* GROVER H. CARRICO
ET AL.
[No. 2, October Term, 1934.]

466

*Decided November 19th, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Albert D. Mackey* and *James W. Hughes,* for the appellants.

*Edward D. E. Rollins,* with whom was *Joshua Clayton* on the brief, for the appellees.

BOND, C. J., delivered the opinion of the Court.

The appellants, sellers of goods to Robert Glenn Carrico on credit, sued the appellees as guarantors of payment. The guaranty was alleged to be in writing. The buyer, too, was made a party defendant, but the record contains no subsequent proceedings referring to him, and it has been stated in argument that a judgment by default was taken against him. Each of the supposed guarantors filed general issue pleas, that he never promised as alleged, and never was indebted as alleged, and on these pleas issue was joined. A third plea, filed by each, denied execution or signature of the writing, and to these pleas the plaintiffs filed special replications alleging that, even if the defendants did not execute or sign as alleged, still, after they had been solicited to do so, the writing was delivered with their names attached, they were notified by registered letters that the credit would be given and the goods sold and delivered on the faith of the supposed guaranty, goods were accordingly sold and delivered to the buyer, and the supposed guarantors were twice notified of his failure to pay in full, yet had made no answer to any notification; and on this the plaintiffs contended that the defendants were estopped now to deny their signatures. Demurrers to the replications were sustained, and judgment for defendants on the demurrers were entered.

It was permissible to appeal to this court without awaiting trial of the issues joined on the first and second pleas, because in actions on alleged guaranties the denials of the signatures to the writing, standing uncontested in the absence of any pleading over, constituted complete bars to further prosecution. *Wyman v. Gray,* 7 H. & J. 409; *Boehm v. Baltimore,* 61 Md. 259, 265; *Nelson v. Chesapeake Co.* 159 Md. 20, 22, 149 A. 442; 1 *Poe, Pl. & Pr.,* sec. 706.

The ruling on the demurrers could not be supported on the ground that estoppels *in pais* cannot be pleaded specially. Where such estoppel "is relied upon to avoid a defense set up in a special plea, it too must be specially

pleaded." *Bitting v. Home Ins. Co.*, 161 Md. 56, 60, 155 A. 329, 331.

It is not alleged that the defendants derived any benefit from the forgery of their names, that the buyer, who brought the signed guaranty to the sellers, was the defendants' agent for any purpose, or that there was any dealing or relationship between the parties which might compel the defendants, by a legal duty, to repudiate the signatures of which the plaintiffs wrote them. And if the estoppels contended for should exist, it must be because under the circumstances the alleged silence of the defendants, or their failure to answer, naturally meant that the defendants assented to the statements that they had guaranteed the buyer's payments, and prejudice resulted to the sellers from reliance on the apparent assent, as must have been anticipated. Commitment of the defendants by their silence, and reliance on it by the plaintiffs, would raise the estoppel. Retraction could not then be permitted. *First Nat. Bank v. Wolfe*, 140 Md. 479, 117 A. 898; *Eareckson v. Rogers*, 112 Md. 160, 169, 75 A. 513; *Carroll v. Manganese Safe Co.*, 111 Md. 252, 258, 73 A. 665; *Carmine v. Bowen*, 104 Md. 198, 64 A. 932; note, 25 *A. L. R.* 177.

To establish prejudice or injury to the sellers, the allegations are sufficient. Those in the declaration, that sales under the contract were made between the date of the contract and the date eighteen months later, may signify that one or more sales were made before the defendants had had a reasonable time to reply to the letters of notification if they had wished, and therefore without an appearance of acquiescence by them to be relied on, so far as those sales are concerned. And to the extent of any default in payment for goods sold, then there may have been no prejudice to the plaintiffs from the failure to answer. *Ewart, Estoppel*, 132. But in sales subsequently made, there might have been injury from the mistaken reliance. Any subsequent prejudice to the creditors by their reliance prior to their discovery of the forgery would meet the requirement. *Eareckson v.*

*Rogers,* 112 Md. 160, 169, 75 A. 513; *Andrews v. Clark,* 72 Md. 396, 437, 20 A. 429; *Hambleton v. Central Ohio Co.,* 44 Md. 551, 561; *Cunningham v. First Nat. Bank,* 219 Pa. 310, 68 A. 731; *Brown v. People's Nat. Bank,* 170 Mich. 416, 136 N. W. 506; *Ogilvie v. West Australian Corp.,* (1896) A. C. 257.

Whether failure to respond to a statement or charge, oral or written, does amount to an acquiescence in it, and an admission of the fact, is a question that arises in a variety of cases, civil and criminal, on offers of evidence or otherwise. And the answer depends in each case on the facts of that case. 2 *Wigmore, Evidence,* sec. 1073; notes, 25 *L. R. A. (N. S.)* 542, 564, 567; 42 *L. R. A. (N. S.)* 889, 893; 8 *A. L. R.* 1163. Mere silence, standing alone, does not have that effect. On the facts it must appear that the statements or charges, if wrong, would naturally, or with such great probability, have brought contradiction, that absence of contradiction gave assurance of truth. And the fact that the failure to contradict was a failure to answer letters has an important bearing on the question of interpretation and effect to be given. "Such evidence is of a lighter character than silence when the same facts are directly stated to the party. Men use the tongue much more readily than the pen." *Fenno v. Weston,* 31 Vt. 345. And the duties of strangers to transactions are duties of forbearance, not of exertion and assistance. Compare *A. L. Inst. Restatement, Torts,* sec. 314. One party "no more can impose a duty to answer a charge than he can impose a duty to pay by sending goods. Therefore a failure to answer such adverse assertions in the absence of further circumstances making an answer requisite or natural has no effect as an admission." *Leach & Co. v. Peirson,* 275 U. S. 120, 48 S. Ct. 57, 72 L. Ed. 194; *Biggs v. Stueler,* 93 Md. 100, 112, 48 A. 727; *Ryan v. Canton Nat. Bank,* 103 Md. 428, 450, 63 A. 1062; *Bigelow, Estoppel,* (6th Ed.) 662. Whether given facts do or do not show an admission sufficient to create the estoppel is a ques-

tion to be disposed of by the court. *Carroll v. Manganese Safe Co.,* 111 Md. 252, 259, 73 A. 665.

In two cases in other jurisdictions, on substantially the same facts as now alleged, it has been held that failure of the supposed guarantors to answer letters and give warning of the forgery of their names estopped them to deny the signatures when sued. *Strauss Bros. v. Denton,* 140 Miss. 745, 106 So. 257; *Heberling v. Dalton,* 18 La. App. 233, 138 So. 176. And in a Canadian case of some similarity, frequently cited on this branch of the law, the same conclusion was reached.. *Dominion Bank v. Ewing,* 7 Ont. L. R. 90, 35 Can. Supreme Court, 133. "No doubt a man is not bound to answer every letter he receives, or to combat every charge or allegation which the writer may make against him. * * * But a business communication like that in question stands on quite a different footing, and according to the dictates of common sense and fair dealing does require an answer, since it must be apparent to the receiver that the future conduct of the sender, in regard to the receiver's supposed obligation, may or will be different if it is a forgery from what it would be if it were the genuine instrument it was taken for." *Dominion Bank v. Ewing, supra.* On the other hand, it was held in *Rothschild v. Title Co.,* 204 N. Y. 458, 97 N. E. 879, that a supposed mortgagor, whose name on the mortgage had been forged by a son, was not estopped to attack the mortgage on that ground by failure to warn the mortgagee after learning of the forgery. And in a case of denial by the apparent maker of a note, that he had signed or authorized the signature, the court said: "It is true that a decent regard for the rights of others ought to induce every man to make such disclosure immediately upon the fact coming to his knowledge. The fact that Shinew did not immediately communicate with the bank is a circumstance tending strongly to corroborate the evidence of Dr. Snyder that he had authorized him to tell his wife to sign the note; for the natural and usual thing for an honest man to do would be to communicate immediately to those most interested, or

most likely to be injured thereby, the fraud sought to be perpetrated upon them, and this even though it calls for some inconvenience upon his part, and his failure to do so might well reflect upon the credibility of his evidence, and induce a jury to disregard it altogether, or to find against him upon any disputed question of fact. But he is under no legal obligation to do so, unless the circumstances are such that the holder of the forged instrument would have a right to rely upon his silence, and relying thereon would be prejudiced thereby; and the fact that he did not immediately communicate with the bank, while it might reflect upon the credibility of his· evidence, has no further legal significance." *Shinew v. First Nat. Bank,* 84 Ohio St. 297, 95 N. E. 881, 883.

There is no question before this court of admitting evidence to prove actual signing by the defendants. The sole question brought up is that of estoppel now to defend on the ground that they did not sign, assuming it to be true that they did not. There is nothing to take the defendants out of the class of innocent men sought to be charged with a liability from a transaction between others, one to which the defendants were strangers. And the question of estoppel is not one of convenience for business transactions, but only one of interpretation of the lack of contradiction of the undertaking announced in the letters. Did the failure so to respond and send a contradiction amount to an assurance by the defendants that they had in fact signed the guaranty?

The conclusion of this court agrees with that of the trial court. It finds itself unable to agree that the absence of contradiction must be taken as an admission of the signatures, and exclude the defense that the defendants did not sign, however the facts might have argued against such a defense on a trial of it.

*Judgment affirmed, with costs.*