SAVINGS BANK OF NANTICOKE *v.* MAURICE D. CAUSEY

[No. 28, January Term, 1940.]

*Decided March 5th, 1940.*

674

 

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, and DELAPLAINE, JJ.

*William W. Travers* and *Joseph Y. Gunby*, with whom were *E. Dale Adkins, Jr.*, and *Woodcock, Webb, Bounds & Travers* on the brief, for the appellant.

*J. Edgar Harvey*, with whom were *Harvey & Cropper* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

Maurice D. Causey filed a bill against the Savings Bank of Nanticoke, praying a decree to compel the bank to assign to him a mortgage for $200 given to it by Mrs. Edith M. Toadvine, his mother-in-law, and, from a decree in his favor, the defendant bank appeals. There was other relief prayed but, as it was abandoned by the plaintiff, it need not be discussed here.

The Salisbury National Bank, trustee under the will of Walter B. Miller, held a mortgage from Edith M. Toadvine for $1100 on a parcel of land containing four and one-half acres, at Nanticoke, on which she, with her aged father, resided. It had been conveyed to her by her father, Ware C. Walter, February 14th, 1898. The mortgage to Walter B. Miller was dated January 27th, 1914. June 4th, 1935, the Salisbury National Bank assigned the mortgage to Carroll E. Bounds and William W. Travers for the purpose of foreclosure, who advertised the property for sale on June 29th, 1935. Adjoining the four and one-half acre parcel was a one acre lot, conveyed to Mrs. Toadvine by Mary P. Crosley, April 1st, 1905, and from that time on the two parcels of land were occupied by Mrs. Toadvine and her father, the improvements being on the larger parcel. On February 14th,

1921, the Nanticoke Bank took a mortgage on the one acre parcel from Mrs. Toadvine to secure the payment of $200. On June 29th, 1935, the Nanticoke Bank held three judgments, which were general liens on all of the mortgaged real esetate, the balances on which then amounted to $1007.01. Two of the judgments, amounting to $850, were also against Mrs. Toadvine's father, Ware C. Walter.

The day the Miller mortgage had been advertised for foreclosure, the plaintiff, Causey, whose home was in Baltimore, went to the Nanticoke Bank, and inquired of Wilbur F. Turner, then president of the bank, what it would require to stop the mortgagee's sale and take up the liens on the property, and was advised that the liens amounted to $2250. He then told Turner that if Mrs. Toadvine would convey her property, which he thought was all in one parcel, to him and his wife, they would give a mortgage to the bank for not more than $2300 on the Toadvine property, and on his own property, located nearby, on which the Nanticoke Bank already had a first mortgage, in consideration of the assignment to him of the bank's liens, it having arranged, for its protection, to take over the Miller mortgage. Causey then went to see Mrs. Toadvine, who promptly consented to the proposed arrangement; whereupon, the same day, the following agreement, typewritten by Mr. Turner, was entered into between him, acting for the bank, and Mr. Causey:

"The Savings Bank of Nanticoke hold certain mortgages and judgments against the property of Mrs. Edith M. Toadvine situated in the Village of Nanticoke on the East side of the County Road leading from Jesterville to Waterview, which said Bank agrees to assign to said Maurice D. Causey, and said Maurice D. Causey agrees to give to the said Savings Bank of Nanticoke, a mortgage on said Property of Edith M. Toadvine (abovementioned) and a second mortgage on his property situated on west side of County Road in the amount of $2300.00.

"On the faith of this agreement the Savings Bank of Nanticoke has this day (June 29, 1935) stopped a sale

for foreclosure on said Edith M. Toadvine's property—
and deed and mortgage above-mentioned to be duly
executed."

In pursuance of this agreement Turner saw to the
preparation of a deed from Mrs. Toadvine to Causey and
his wife, and a mortgage from them to the bank to secure
the payment of $2300, which has been paid, and had the
notary at the bank take the acknowledgments. As it
turned out, the deed contained a description of the four
and a half acres described in the Miller mortgage. Causey
did not know that the conveyance to him and his wife
excluded the one acre parcel; he thought it was one
parcel covered by one deed. When they made the mort-
gage to the bank, it was his purpose to take up all liens
on the Toadvine property. He says that he so told
Turner, and furthermore $2300 was the limit to which
he was willing to go. This statement of Causey has not
been successfully denied. Turner testified that the plural
"mortgages" in the agreement was unintentional and er-
roneous, and that he had no idea of releasing or assign-
ing the mortgage for $200 on the acre parcel of the
whole lot. He knew the whole situation; Causey did not
know anything, except what he learned from Turner,
upon whom he relied. Turner is the one man who knew
what was in Causey's mind, and what he was under-
taking to do, and that was to save Mrs. Toadvine's home,
and to do so it was necessary to take up the mortgages
and judgments. It was a typical case in which it was
the duty of one in whom confidence was reposed to speak
and disclose the facts, which he knew and the other party
was entitled to know, upon which the latter was acting,
or thought he was acting. *Catalano v. Bopst,* 166 Md.
91, 100, 170 A. 562; *Furst v. Carrico,* 167 Md. 465, 468,
175 A. 442; *Gorter on Evidence,* 144; 22 *C. J.* 321. Com-
pare *Biggs v. Stueler,* 93 Md. 100, 48 A. 727.

In our opinion, the agreement in evidence in this case
correctly expresses the understanding of the parties to
the case, and the decree appealed from should be affirmed.

*Decree affirmed, with costs.*